IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

WILLIAM E. HESTER, III, and
KATHRYN H. HESTER,

*Plaintiffs,*

v.

CAUSE NO. 3:26-CV-150-CWR-LGI

UNITED STATES TENNIS
ASSOCIATION, INC.,

*Defendant.*

## ORDER

Defendant moves to dismiss this case for lack of personal jurisdiction or, alternatively, transfer the case to the Southern District of New York. Docket No. 9. On review, Defendant's motion is granted in part and denied in part. Although the Court maintains personal jurisdiction over Defendant, for the reasons stated below, transfer is preferable pursuant to 28 U.S.C. § 1404(a). The case shall be transferred to the Southern District of New York.

### Background

William and Kathryn Hester are the son and daughter of former United States Tennis Association president and chairman of the United States Open tennis tournament, W.E. "Slew" Hester, Jr. During his tenure as president and chairman, Slew, a Mississippi native, was instrumental in transforming the U.S. Open into the international and incredibly profitable spectacle that it is today. He is credited with shepherding the move of the U.S. Open from a private country club in Forest Hills to what, under Slew's direction, would become Louis Armstrong Stadium. So great were his contributions to the organization and tournament, that the USTA Board voted to give Slew and his wife, Rosa, box seats free of

1

charge to attend the U.S. Open for the duration of their lifetimes. Rosa passed away in 1984. Following his wife's passing, Slew sent a letter to USTA leadership, asking that, after his death, priority ownership of his box seats pass to his children, who would pay for the box. The USTA voted unanimously to authorize that request. Slew passed away in 1993.

Four years after Slew's passing, the USTA opened Arthur Ashe Stadium and moved the U.S. Open's main matches from Louis Armstrong Stadium to Arthur Ashe. In July 1996, the USTA informed the Hesters that the configuration of Arthur Ashe—which was set to debut the next year—would be quite different and that the Hesters' seats would be in a new location. The Hesters objected, claiming that the new location was significantly inferior, leading to further correspondence that failed to resolve the dispute. In July 1997, the Hesters filed a complaint in Hinds County Circuit Court, and the USTA removed that case to this district court and moved to dismiss for lack of personal jurisdiction or, alternatively, sought to transfer venue. *See Hester v. United States Tennis Assoc., Inc.*, No. 3:97-CV-631-WHB (S.D. Miss. 1997). Before a ruling issued on that motion, the parties reached an agreement to settle the case. Upon reaching this agreement, the parties jointly moved the court to dismiss the 1997 suit with prejudice. The court entered such an order. Docket No. 14-9.

Plaintiffs now seek to enforce the terms of that settlement agreement, and Defendant objects to this Court's exercise of personal jurisdiction over it. Alternatively, Defendant requests that the Court transfer this matter to the Southern District of New York.

## Legal Standards

### 1.    *Personal Jurisdiction*

This Court's diversity jurisdiction is invoked. "A federal court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant. First,

the forum state's long-arm statute must confer personal jurisdiction. Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006) (citation omitted). *See also Vines v. Wyatt Energy Resources*, *LLC*, 5:20-CV-115-CWR-MTP, 2021 WL 1741885, at *1 (S.D. Miss. April 2, 2021) (applying same).

"[C]onsent is a basis for personal jurisdiction independent of the minimum contacts inquiry." *Anderson v. GlobalSantaFe Offshore Servs. Inc.*, 924 F. Supp. 2d 738, 748 (E.D. La. Feb. 15, 2013) (citing *Burker King v. Rudzewicz*, 471 U.S. 462, 472 n. 14 (1985)). *See also, e.g., Ainbinder v. Potter*, 282 F. Supp. 2d 180, 185 (S.D.N.Y. 2003) ("Parties may waive a personal jurisdiction defense by consent, and jurisdiction based on consent satisfies the requirements of due process.") (citation omitted).

### 2.      *Venue & Transfer*

Rule 12(b)(3) allows a party to move for dismissal based on improper venue. Fed. R. Civ. P. 12(b)(3). "On a Rule 12(b)(3) motion to dismiss for improper venue, the Court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007). "Although the Fifth Circuit has not ruled on which party bears the burden on a Rule 12(b)(3) motion, 'most district courts within this circuit have imposed the burden of proving that venue is proper on the plaintiff once a defendant has objected to the plaintiff's chosen forum.'" *Hebei Viroad Biotechnology Co., LTD. v. Phippy LLC*, No. 4:24-CV-555, 2025 WL 918540, at *1 (S.D. Tex. Mar. 26, 2025) (quoting *Galderma Lab'ys, L.P. v. Teva Pharms. USA, Inc.*, 290 F. Supp. 3d 599, 605 (N.D. Tex. 2017) (collecting cases)).

District courts "have broad discretion in deciding whether to order a transfer" under 28 U.S.C. § 1404(a). *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (quotation marks and citation omitted). This statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).

**Analysis**

The Court begins, as it must, with personal jurisdiction. This Court finds that it may exercise personal jurisdiction over USTA, because USTA submitted to the exercise of power over it with respect to this matter, when it voluntarily entered into the settlement agreement in this district that the current suit seeks to enforce.

"[W]here a party agrees to a stipulation and settlement, it has consented to the court's jurisdiction and cannot later contest personal jurisdiction in a suit to enforce the settlement agreement." *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 834 (5th Cir. 1986) *reversed in part on other grounds* by 836 F.2d 850 (5th Cir. 1988). *See also Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) ("A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it.") (citing, *inter alia*, *J. Kahn & Co. v. Clark*, 178 F.2d 111 (5th Cir. 1949)); *United States v. Gluklick*, 801 F.2d 834, 837 (6th Cir. 1986) ("[A] stipulation and agreement to settle constitutes a consent to the personal jurisdiction of the court.") (citations omitted).

Although USTA challenged the exercise of jurisdiction over it in the 1997 suit, it acted inconsistently with that challenge, when it asked the court to rule on the merits of the case—by dismissing it with prejudice—in light of the parties' settlement agreement. *See PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 460 (5th Cir. 2001) (noting that

4

"a party may waive any jurisdictional objections if its conduct does not reflect a continuing objection to the power of the court to act over the defendant's person"); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704-05 (1982) (noting that "actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not"). The Court construes the voluntary entry into settlement and subsequent request for entry of dismissal with prejudice as USTA's waiver of its objection to the court's exercise of jurisdiction over it with respect to the 1997 matter. Given that submission, USTA may not now object to the exercise of jurisdiction over it in this subsequent suit, brought to enforce the agreement reached in that matter.[1] *See Travelers Indem. Co.*, 798 F.2d at 834.

The Court now turns to the issues of venue and transfer. In addition to challenging this Court's exercise of personal jurisdiction, Defendant moves for dismissal on grounds that venue is improper in the Southern District of Mississippi. Although not styled this way here, such a challenge is properly asserted under Rule 12(b)(3).

The Hesters asserted venue in this district under 28 U.S.C. § 1391(b)(2). For venue to be proper under that section, "[a]lthough the chosen venue does not have to be the place where the most relevant events took place, the selected district's contacts still must be

---

[1] The Court premises its ruling on USTA's implicit consent to jurisdiction in this matter. The Court may not have reached the same outcome without USTA's prior submission to the exercise of jurisdiction over it with respect to this dispute. *See, e.g., McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) ("[C]ommunications relating to the performance of a contract themselves are insufficient to establish minimum contacts."); *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 502 (5th Cir. 2022) (declining to find specific jurisdiction where "the defendant's communications to Texas rested on nothing but the mere fortuity that the plaintiff happens to be a resident of the forum" and noting that the "mere fortuity that one company happens to be a Texas resident is not enough to confer jurisdiction") (cleaned up) (citations omitted); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("[T]his Court has repeatedly held that the combination of . . . engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.") (citation omitted).

substantial." *McClintock v. Sch. Bd. E. Feliciana Par.*, 299 F. App'x 363, 365 (5th Cir. 2008) (per curiam). The settlement agreement that the Hesters now seek to enforce was negotiated and executed, at least in part, in this district. It also formed the basis of the parties' joint motion seeking dismissal of the 1997 case in this district. Furthermore, "judicial economy and the policy favoring settlement as an end to litigation require that settlement agreements be enforced in the same court in which the litigation was pending." *Lee v. Hunt*, 483 F. Supp. 826, 832 (W.D. La. 1979). The Court finds venue proper here.

Although personal jurisdiction and venue have been established, the Court finds good cause to transfer this case pursuant to 28 U.S.C. § 1404(a). District courts may transfer an action to another district where "a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am.*, 545 F.3d at 312 (quoting 28 U.S.C. § 1404(a)). Defendant has established that this action might have been brought in the Southern District of New York. The USTA maintains its principal place of business there, the amount in controversy would be unaffected, and complete diversity would be maintained.

"To determine whether transfer is in the interest of justice and for the convenience of the parties and witnesses, courts evaluate private and public interest factors." *El Dorado Oil & Gas, Inc. v. Alaniz*, No. 1:22-CV-248-LG-BWR, 2024 WL 289353, at *7 (S.D. Miss. Jan. 25, 2024) (citing *In re Volkswagen of Am.*, 545 F.3d at 315).

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*In re Volkswagen of Am.*, 545 F.3d at 315 (quotation marks, brackets, and citations omitted). This list of factors is not exhaustive or exclusive. *Id.* And none of these factors are dispositive. *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004). Nor is simply counting the factors the required methodology. *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013) ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."). This matter is squarely within this Court's broad discretion. *In re Volkswagen of Am.*, 545 F.3d at 311.

Here, the factors favor transfer. The portion of the settlement agreement, that provides for site-specific performance, requires that performance to occur in the Louis Armstrong Stadium/Arthur Ashe Stadium complex, located in Flushing, Queens, New York.[2] Defendant urges that the documentary sources of proof are located in the Southern District of New York as well. More importantly, likely witnesses, other than the Hesters, are located in or around New York. Isaacs Decl., Docket 9-1 at 1-2 ("[W]itnesses with knowledge of the parties' relationship, the Settlement Agreement, and Louis Armstrong Stadium and Arthur Ashe Stadium, also reside in or around New York."). Furthermore, that a portion of the settlement agreement was performed—by one of Plaintiffs[3]—in Mississippi was merely fortuitous. Had Ms. Hester moved to another site during the life of the settlement agreement, she could have just as easily performed her obligations under the agreement from that new site. The same is not true for the portion of the Agreement relating to New York.

---

[2] While this site is in the Eastern District of New York, it abuts the Southern District of New York.

[3] Indeed, one of the Plaintiffs, Mr. Hester, performs his obligations under the agreement from Louisianna.

Public interest factors likewise favor transfer. The Southern District of New York has the greater interest in resolving this dispute, because the center of gravity in this action concerns real property in New York, and the injunctive relief requested would take effect there.[4] *See Alaniz*, 2024 WL 289353, at *8 ("[T]he Court finds that the Southern District of Texas has the greatest interest in resolving this dispute, because it concerns real property located in Texas, and the injunctive relief requested by Plaintiff would likely take effect there."); *Stellar Restoration Servs., LLC v. James Christopher Courtney*, 533 F. Supp. 3d 394, 428 (E.D. Tex. 2021) ("In disputes involving real property, this factor weighs in favor of the location of the property.") (citations omitted). Therefore, New York has a greater public interest in this controversy than Mississippi. The Court finds that the Southern District of New York is a more convenient and appropriate forum to adjudicate this matter.

### Conclusion

Defendant's motion to dismiss or, in the alternative, transfer this action to the Southern District of New York, Docket No. 9, is granted in part and denied in part. This lawsuit is transferred to the United States District Court for the Southern District of New York.[5]

**SO ORDERED**, this the 4th day of May 2026.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[4] The Hesters' motion for Preliminary Injunction, Docket No. 6, seeks to halt or alter the renovation of the Louis Armstrong Stadium/Arthur Ashe Stadium complex in New York.

[5] Under the Local Rules, an "order that transfers a civil case . . . to a district court outside the Fifth Circuit is automatically stayed for 14 days from the date the order is entered on the docket, unless the court orders otherwise." L. U. Civ. R. 52(c). Considering that a motion seeking a preliminary injunction is pending, Docket No. 6, the Court finds such a stay counterproductive. The case shall transfer upon entry of this Order.